## Hampton Township School District Tax Case.

Argued May 25, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William J. Kenney,* with him *Roy Thomas Clark* and *Rose, Eichenauer, Stewart & Rose,* for appellant.

*Samuel S. Scott,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 24, 1949:

The validity of a resolution of a school district levying a tax on the privilege of mining coal is here under attack on grounds not previously discussed by this Court.

The Act of June 25, 1947, P. L. 1145, closely paralleling the so-called Sterling Act of August 5, 1932, P. L. 45 (which applied, after June 1, 1935, only to cities of the first class), gave authority to the duly constituted authorities of certain municipalities, townships and school districts to impose taxes on such transactions, occupations, privileges, subjects and personal property as were not then, and did not thereafter become, subject

to a State tax or license fee. But the 1947 Act differed from the Sterling Act in that it denied authority to the local bodies, except on sales of admission to places of amusement or on sales or other transfers of title or possession of property, to impose a tax *"on the privilege of employing* such tangible property as is now or does hereafter become subject to a State tax." We need not speculate on the reason for this additional limitation upon the power granted to the local authorities although it is reasonable to suppose that the legislature realized that a tax on the privilege of employing property is, from a practical standpoint, the same in effect as a tax upon the property itself, and that therefore such a tax, if permitted, would be merely a substitute for a direct tax on the property. The value of property is dependent wholly upon the right to use it; thus it was said in *Commonwealth ex rel. v. Clearview Coal Co.*, 256 Pa. 328, 331, 100 A. 820: "For practical purposes, the right to coal consists in the right to mine it." Be that as it may, the validity of the resolution of the Hampton Township School District which is here in question must be tested in the light of this specific prohibition in the Act of 1947 against imposing a tax on the privilege of employing tangible property subject to a State tax.

The resolution, passed on July 6, 1948, imposed a tax of ten cents per ton "upon the privilege, transaction or occupation of mining and/or severing from the ground coal . . . in Hampton Township," and also a tax in that same amount "upon the privilege, transaction or occupation of bringing to the surface of the ground coal within the limits of Hampton Township, mined or severed from the ground beyond the boundaries of Hampton Township." An appeal was taken to the Court of Quarter Sessions of Allegheny County by Butler Consolidated Coal Company to have the tax declared unlawful and void. The court dismissed the appeal.

Butler Consolidated Coal Company conducts the only coal mining operation in Hampton Township. It is a corporation paying a capital stock tax to the Commonwealth, which is a tax on all of its property and assets, and a corporate net income tax which is likewise a property tax: *Lawrence Township School District Tax Case*, 362 Pa. 377, 67 A. 2d 372. Since the coal in place (and also when severed from the ground) is "tangible property", and since, as just stated, it is subject to a State tax, it would seem inevitably to follow, from the express inhibition of the statute, that the School District may not tax the privilege of "employing" it, that is, developing it for commercial purposes. To "employ" is defined in Webster's New International Dictionary as "to make use of as an instrument, means or material." In Funk & Wagnalls New Standard Dictionary it is defined as "to make use of instrumentally"; an illustration there given is "to *employ* money in trade". It is defined in Murray's New English Dictionary as "to apply (a thing) to some definite purpose; to use as a means or instrument, or as material"; an illustration given is "to *employ* her credit with the king". It is clear from these definitions that to "employ" property means not merely to use it in a physical or mechanical sense but also to use it as an instrument or means of effecting some object or maintaining or aiding an enterprise or activity, including therefore an employment for business purposes. The word is commonly so used in our statutes [1] and judicial opinions.[2] That such is its connotation in

---

[1] For example, in the Act of June 10, 1931, P. L. 490 ("said corporations shall be entitled to have a capital stock . . ., without the imposition of any bonus, equal to the amount of the capital actually *employed* or to be *employed* wholly within the State of Pennsylvania . . ."), and in the Act of May 8, 1901, P. L. 150, ("all corporations . . . created by or under the laws of any other State . . . which have any part of their capital actually *employed* wholly within this State . . ." etc.).

the Act appears all the more clearly from the fact that sales taxes are there specifically excepted from the prohibition against taxing the privilege of employing tangible property; this shows that the legislature must have considered that sales taxes would have been included within the prohibition had they not been thus excepted, although sales represent the employment of property, not for its physical uses, but for the conduct of a business activity.

As far as the section of the Hampton Township resolution is concerned which imposes the tax on the privilege, transaction or occupation of bringing to the surface of the ground within the limits of the Township coal mined or severed from the ground beyond the boundaries of the Township, it is clear that bringing the coal to the surface is not only a component but an

---

[2] For example, in *Commonwealth v. Curtis Publishing Co.*, 237 Pa. 333, 335, 85 A. 360, 361, ("The defendant company . . . is using and *employing* its capital and property in this State . . . However, that part of its property actually *employed* and invested in its manufacturing plant and business is exempted from the tax . . .") and in *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209, 211, 8 A. 2d 404, 407, ("In the conduct of that business for the year 1935 it *employed tangible property* of a book value of $331,813.39 . . .") and in *Commonwealth v. Ford Motor Co.*, 350 Pa. 236, 243, 38 A. 2d 329, 333 ("The court below found that all of the capital stock of appellant was properly included in the measurement of its franchise tax, because it was all *employed* by the corporation in conducting a unitary enterprise") and in *Commonwealth v. Quaker Oats Co.*, 350 Pa. 253, 258, 38 A. 2d 325, 328, ("The court below has found . . . that these securities 'were *employed* or held as a reserve by [appellant] in its purchasing business' ") and in *Commonwealth v. Bayuk Cigars, Inc.*, 359 Pa. 202, 205, 58 A. 2d 445, 446, ("The question here involved is whether the value of Bayuk's capital, *employed* or *to be employed* within the State, . . . was made to include property not amenable to local governmental requirements . . .") and in *Commonwealth v. Mack Bros. Motor Car Co.*, 359 Pa. 636, 639, 59 A. 2d 923, 924, ("The sole issue is whether . . . capital of a domestic corporation is to be taxed only when actually *employed* within the Commonwealth . . .").

essential part of the operation of mining. According to Webster's New International Dictionary, to "mine" is "to get ore, metals, coal, or precious stones, *out of the earth.*" The statutory prohibition of the right to tax the privilege of mining the coal necessarily includes and carries with it a prohibition of the right to tax the privilege of performing any constituent part of that operation.

The order of the court below is reversed; the appeal of Butler Consolidated Coal Company is sustained, and the tax resolution of the Hampton Township School District of July 6, 1948 is adjudged invalid and void; the costs of this appeal to be borne by appellant.

Mr. Justice JONES dissents on the ground that the decision unnecessarily repudiates the implications and fair legal intendment of this court's unanimous decision in *Federal Drug Company v. Pittsburgh,* 358 Pa. 454, 57 A. 2d 849.