**UNITED STATES of America**
v.
**Lewis R. STRETCH.**
**Civ. A. No. 28648.**

United States District Court
E. D. Pennsylvania.

Feb. 28, 1961.

Walter E. Alessandroni, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for United States.

Robert C. Duffy, Philadelphia, Pa., for defendant.

CLARY, District Judge.

This matter is before the Court upon defendant's motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted.

The dispute arises out of a contract entered into by the parties on May 3, 1950. This agreement gave defendant the right to establish and operate the cafeteria and vending facilities at 5000 Wissahickon Avenue, Philadelphia, Pennsylvania, a government installation, for the purposes of selling food and nonalcoholic beverages. Defendant agreed to pay the Government 9.1% of the gross revenue received from all operations under the contract in addition to 1% of the gross revenue to be set aside as a Reserve for the replacement of Government-owned equipment. Gross Revenue was defined in the contract as the total receipts of any source received as a result of operations under the contract, *"but there shall be excluded therefrom all sales taxes collected from patrons of the operation conducted hereunder."* (Emphasis supplied).

During the four-year period the contract remained in effect (May, 1950 to May, 1954), the defendant, pursuant to the above underlined provision of the contract, deducted the Pennsylvania Cigarette Tax in the amount of $33,672.28 from gross revenue. The Government apparently did not contest the deduction during the contract period, but now contends that the Pennsylvania Cigarette Tax then in existence was not a sales tax collected from patrons of the operation so as to be excludable from gross revenue and demands judgment against the defendant in the amount of $3,400.90 with interest and costs of suit.

The sole issue presented here is whether the Pennsylvania Cigarette Tax Acts

in effect during the period in question were acts imposing a sales tax which was to be collected from consumers. In order to decide this question it will be necessary to discuss in some detail the salient provisions of the Pennsylvania Cigarette Tax Acts in effect during the period May, 1950 to May, 1954.

The Pennsylvania Cigarette Tax Act was originally enacted in 1935 for a period of two years and thereafter re-enacted in successive odd years. The Acts in effect during the contract period, in which there are no substantial variations, were those of 1949, 1951 and 1953, set out in 72 P.S. § 3154 et seq. The title of the Acts reads:

"An act to provide revenue by imposing a State tax upon sales or gifts of cigarettes by dealers as herein defined; requiring persons engaged in the sale of cigarettes at wholesale and retail to secure permits; prescribing the method and manner of collecting such tax; making it unlawful to possess cigarettes upon which the tax has not been paid; conferring powers and imposing duties on the Department of Revenue, and persons, as herein defined, engaged in the sale of cigarettes at retail or wholesale; and providing penalties."

In Section 3155 *Dealer* is defined as "Any wholesale dealer, and, in the cases hereinafter prescribed, retail dealers. The term 'wholesale dealer' shall include any person, who or which sells, within Pennsylvania, cigarettes to retail dealers, or for purposes of resale, or who or which purchases cigarettes directly from any manufacturer for purposes of resale. The term 'retail dealer' shall include every person, other than a wholesale dealer, who or which receives from any source whatsoever cigarettes for the purpose of sale to consumers in Pennsylvania, or for any other purposes than that of resale, whenever the packages of cigarettes, so received, do not have affixed to them the stamps evidencing the payment of the tax imposed by this act."

Section 3156 provides that it is unlawful to sell cigarettes without a permit; sets out certain exceptions; provides that permits are not assignable; and, gives the Department of Revenue the power to suspend permits.

Section 3157 provides in part:

"A State excise tax is hereby imposed and assessed upon sale of cigarettes by dealers * * *. Provided, that only one sale of the same package of cigarettes shall be used in computing the amount of the tax due hereunder."

"Except as hereinafter provided, *dealers shall be liable to the Commonwealth as taxpayers for the payment of the tax imposed by this Act,* and shall pay the tax into the State Treasury, through the department, by purchasing from the department adhesive stamps of such design and denominations as may be prescribed by the department." (Emphasis supplied.)

Section 3158 provides, among other things, that each dealer shall affix, within 24 hours after receipt, stamps to each package of cigarettes evidencing the payment of the tax imposed and shall cancel such stamps before the cigarettes are offered for sale unless the stamps are affixed before such dealer receives them.

Finally, Section 3159 provides that the Department of Revenue shall appoint wholesale dealers in cigarettes, as well as others, as agents to affix the stamps to be used in paying the tax imposed upon the sale of cigarettes, and such agent shall retain out of the moneys to be paid by him for such stamps a commission of 4% if, and when he has purchased the stamps affixed by him directly from the department. The other sections are not relevant to the question involved here.

The Government contends that a reading of the foregoing sections makes it abundantly clear that the tax was imposed and assessed upon the sale of cigarettes by dealers who were liable as taxpayers and that the tax was not imposed upon the consumer as defendant

contends. Our reading of the Acts in question leads us to the same conclusion.

First, it should be noted that there is no question but that the Pennsylvania Cigarette Tax Acts in question impose a sales tax. In fact it has been so held. Rice Drug Company v. Pittsburgh, 1948, 360 Pa. 240, 61 A.2d 878.

From the definition of *Dealer* as presented in the Acts, as well as the other sections referred to above, it seems clear that a tax was being imposed either upon a wholesaler or a retailer engaged in selling cigarettes, depending upon the circumstances. If the wholesaler was to sell to a retailer for eventual resale, then the tax was imposed upon the wholesaler. If, however, the retailer obtained the cigarettes directly from the manufacturer, without an intervening wholesaler, then the retailer was to pay the tax by purchasing stamps from the Department of Revenue. The Acts specifically provide that only one sale was to be used in computing the tax. In effect this means that the tax could only be imposed on the sale by the wholesaler to the retailer or on the sale by the manufacturer to the retailer, whichever manner of distribution was used. Obviously, another tax could not then be imposed on the sale by the retailer to the consumer.

Certainly it would be naive not to recognize that the retailer would include the cost of the tax imposed upon him in the price of the cigarettes. But this is not mandatory and conceivably the retailer could sell the cigarettes to the consumer without passing on the tax burden. Nowhere in the Acts is any liability placed upon the consumer as a taxpayer. We are convinced that the tax levied on the wholesaler or retailer, depending upon the circumstances, can be considered as nothing more than an additional cost of operation which, in the present case, the defendant must bear.

That this Act imposed a tax upon the dealer as opposed to the consumer is also apparent from the few cases decided under the Act. In the Rice case, supra, it was clearly indicated that the seller of cigarettes is the party from whom the Commonwealth collects the tax. Commonwealth v. Flickinger, 1950, 365 Pa. 59, 73 A.2d 652, is a case in which the constitutionality of the Act was upheld. The Supreme Court of Pennsylvania affirmed the conviction of one acting as a dealer in whose possession were found 332 cartons of cigarettes upon which no Pennsylvania tax had been paid. Here again it was pointed out that the person who sells the cigarettes is the party responsible for paying the tax. And in Stephano Bros. v. Secretary of Revenue, 1944, 54 Dauph., Pa., 157, it was held that the legislature may properly classify vendors of cigarettes as subject to the imposition of the tax.

Defendant contends that the Internal Revenue Code of 1939, in effect during the contract period, in its treatment of state and local sales taxes with respect to deductibility by the consumer-taxpayer is in conflict with the present position of the Government. Defendant relies on Section 23(c) (3) of the Internal Revenue Code of 1939, Title 26 U.S.C.A., and Section 29.23 of Treasury Department Regulation 111 (1943).

The Code provides in pertinent part that in the case of a tax imposed by a state upon persons engaged in selling tangible personal property at retail, if the amount of such tax is separately stated, then to the extent that the amount so stated is paid by the purchaser to such person such amount constitutes a tax imposed upon and paid by the purchaser. The Statute permits the purchaser of tangible personal property from a retailer to deduct the amount of the tax imposed by State law upon the retailer if the tax is separately stated and is paid by the purchaser. From this defendant concludes that the tax was on the consumer's purchase, and since Congress allows it as a deduction from the consumer's gross income, it cannot be included in gross revenue by the defendant. Conceding for argument sake that the stamp can be considered as a separate statement of the tax, as defendant submits, we still do not believe that his conclusion is warranted.

■■ Deductions from gross income for income tax purposes are a matter of legislative grace on the part of Congress. Commissioner of Internal Revenue v. Sullivan, 1958, 356 U.S. 27, 78 S. Ct. 512, 2 L.Ed.2d 559. The fact that Congress permits one to deduct a tax such as we have here does not automatically make this a sales tax collected from the consumer. In fact, one of the requisites of the statute relied upon by defendant is that the tax must have been imposed upon the retailer. Granted what the retailer does in effect is collect the tax from the consumer, Congress realized, as do we, that the retailer would undoubtedly pass the tax onto the consumer in the price of the article. But the retailer does this solely for his own benefit to recoup the cost of the tax he had already paid.

The Government, in its supplemental brief on this motion, calls our attention, for comparison, to the Consumers Sales Tax of 1953, 72 P.S. § 3407–101 et seq.

Section 3407–201 reads in part:

"A tax is hereby imposed upon each separate sale at retail within this Commonwealth, which tax shall be collected by the seller from the purchaser and shall be paid over to the Commonwealth as herein provided."

The above provision, as well as the short title of the Act, clearly indicates that the tax is being imposed upon the consumer. We believe that it was this type of tax which was contemplated by the parties to the contract under consideration.

It should also be noted that the Pennsylvania Cigarette Tax Act enacted in 1957, 72 P.S. § 3168–101 et seq., which repealed the previous Acts, for the first time specifically provided that the tax shall be conclusively presumed to be a direct tax on the retail purchaser or ultimate consumer, precollected for convenience. The failure to include this provision in the previous acts indicates to us that prior to 1957, the legislature did not consider that the tax was imposed on the ultimate consumer.

From what has been said above, it follows that the complaint states a claim upon which relief can be granted. That is the only motion presently before the Court. Whether the defendant has other and further defenses than the one here advanced will not be known until a responsive pleading is filed. The present motion will be denied and defendant may file his answer within twenty (20) days from the date hereof.